(No. 21510.—

THE FIRST NATIONAL BANK OF OTTAWA, Admr., Appellee, *vs.* THE WEDRON SILICA COMPANY, Appellant.

*Opinion filed February 23, 1933—Rehearing denied April 5, 1933.*

Dunn and DeYoung, JJ., dissenting.

Winston, Strawn & Shaw, and George A. Schneider, (Silas H. Strawn, John D. Black, and Charles J. McFadden, of counsel,) for appellant.

Follett & Follett, and M. D. Morahn, for appellee.

Mr. Justice Orr delivered the opinion of the court:

Appellant, the Wedron Silica Company, seeks by this appeal to reverse a judgment for $10,000 rendered against it after a jury trial in the circuit court of LaSalle county in favor of Charles Clouse, a former employee. The suit was brought under the Occupational Disease act for permanent injury to Clouse's health, arising out of and in the course of his employment and resulting in his total disability on March 12, 1931.

For many years prior to March 12, 1931, the appellant had been engaged in the business of mining and processing silica at Wedron. The silica, after being quarried or surface-mined, was washed, cleansed and ground at appellant's factory and shipped to its customers, usually in box-cars. For more than five years prior to March 12, 1931, Clouse had worked in many places in the factory and in the loading of box-cars and was exposed to the inhalation of silica dust. Silica of a degree of fineness as to float in the air was sold by appellant, and this particular grade was collected by air-suction apparatus to an amount, on occasions,

of ten tons per day. The very nature of appellant's business required that some phases of it be conducted in heavy concentrations of the finest particles of silica dust. Some of this dust, in certain operations, did not float around in the air as dry dust but was suspended in the air in a mist of water vapor. The four counts of the declaration charged, in substance, that appellant had violated the Occupational Disease act of 1911 by failing to provide reasonable and approved respirators and devices required by the act; by failing to wet down the dust and prevent its circulation; by not providing suction fans and other devices to effectively prevent employees from inhaling dust, gases, fumes and other mineral substances in the buildings and box-cars, and that as a result Clouse contracted silicosis and tuberculosis and became totally disabled. Issue was joined, and the various disputed points raised by voluminous pleadings will, so far as they are material, receive consideration in this opinion.

It is first contended by appellant that section 15 of the Occupational Disease act, as amended June 21, 1923, (Smith's Stat. 1931, chap. 48, par. 73, p. 1419,) is repugnant to the provisions of the State and Federal constitutions which inhibit the legislative branch from making arbitrary and unreasonable discriminations against persons in the same class. Section 1 of the act provides, in substance, that every employer engaged in any work or process which may produce illness or disease peculiar to such work or subjects employees to illness or disease incident to such work to which employees are not ordinarily exposed in other lines of employment, shall for the protection of such employees adopt and provide reasonable and approved devices, means or methods for prevention of such industrial or occupational diseases. Section 2 of the act provides that any employer engaged in any process or labor in which sugar of lead, white lead, lead chromate, litharge, red lead, arsenate of lead or Paris green are used or handled, or the manu-

facture of brass or the smelting of lead or zinc, or in any process in which poisonous chemicals, minerals or other substances are used or handled by the employees therein in harmful quantities or under harmful conditions, shall provide proper working clothing, and in case of noxious or poisonous dust shall provide adequate and approved respirators and maintain them in good condition for such employees. Subdivision (a) of section 15 as amended in 1923 provides that for any injury to the health of any employee proximately caused by willful violation of section 1 or willful failure to comply with its provisions, a right of action shall accrue to the party whose health has been so injured, for any direct damages sustained thereby, etc., not to exceed the sum of $10,000. Subdivision (b) of section 15 provides for recovery by an employee engaged in one or more of the occupations referred to in section 2 of the act in the same manner and subject to the same conditions and limitations as are provided by the Workmen's Compensation act for accidental injuries. The Industrial Commission is given jurisdiction over the operation and administration of subdivision (b) of section 15, and it is further provided that "subdivision (b) of this section shall apply automatically and without election to all employees and employers engaged in the occupations referred to in section 2 of this act."

Appellant contends that the construction placed by the trial court upon section 15 of the Occupational Disease act as amended in 1923 is unconstitutional and violative of those sections of the State and Federal constitutions which provide against the taking of property without due process of law. It is thus argued that to permit employers enumerated in section 2 of the act to receive the benefit of a limited liability under the Workmen's Compensation act and at the same time impose a different liability upon those employers engaged in processes of manufacture other than those described in section 2 creates a class out of a previ-

ously established class, and subjects those classified under section I to greater burdens than those enumerated under section 2.

An amendment to section 15 of the Occupational Disease act was first made in 1921. Its effect was to declare that occupational diseases contracted in those industries enumerated as especially dangerous in section 2 of the act should be treated as a happening of an accidental injury within the meaning of the Workmen's Compensation act. At the same time there was taken away from the employee in the industries under section 2 his statutory or common law right to damages and in lieu thereof he was given the right to compensation. This whole amendment dealt with situations arising exclusively in those industries especially dangerous to health which the legislature placed in section 2. No change was made in section I and none in respect to those industries placed within the purview of that section. Except for the noted amendment the original act of 1911 remained in full force and effect. This amendment of 1921 was held unconstitutional by this court, (*Kelley* v. *St. Louis Smelting Co.* 307 Ill. 367,) but not upon any of the grounds advanced by appellant in this case. In 1923 section 15 as it now stands was again amended, and this amendment was declared not to embrace more than one subject, and was held constitutional by this court in *Zurich Accident Ins. Co.* v. *Industrial Com.* 331 Ill. 576. It is significant to note that in its 1923 amendment the legislature again failed to disturb section I or make any of its amended provisions apply to those industries grouped under that section—*i. e.,* those industries which are not declared especially dangerous to the health of the employees working therein. The right remained, as it had from 1911, for an employee in any industry under section I to recover for an occupational disease by bringing an action at law for damages. In fact, the 1923 amendment went even further. and by item 5 of subdivision (*b*) of section 15

expressly reserved the right of an employee under section 1 to recover damages by an action at law.

The legislature in 1911 passed both the Occupational Disease act and the original Workmen's Compensation act. These acts, while passed at the same session, were distinct and unrelated. The legislature thus plainly recognized that there was, according to its understanding, a distinct difference in the field of employment between an occupational disease and an accidental injury. One employer may be liable under both acts, depending upon the varied nature of manufacturing processes and their results upon the different employees. Under the Occupational Disease act of 1911 the legislature directed the diseased employee to seek his remedy through an action at law; in the case of accidental injury the employee was directed to seek his remedy through the Industrial Board. By these different remedies and methods of recovery the diseased employee obtained damages; the accidentally injured employee received compensation.

In the Occupational Disease act of 1911 the legislature saw fit to further classify. It did not treat all occupational diseases, or the industries giving rise to them, in the same manner. It very clearly set forth its conclusions that the liability of persons contracting occupational diseases was variable, according to the work engaged in. Section 1 of the act stated, in effect, that the legislature considered that there were certain industries where the character of the work was not especially dangerous to the health of the employees. This section included industries in general, and also stated in general terms what protective or precautionary measures should be taken by the employer falling within its terms. Section 2 gives very clear expression to the legislative belief that certain industries, because of their inherent characteristics as then known, were especially dangerous to the health of men working therein. Because of the additional hazards taken by employees therein the legislature was somewhat particular in stating what protective

or precautionary measures should be taken by the employers. In other words, the legislature endeavored to compel the employers, under section 2, to match the hazards and risks of their industries with protective or precautionary measures of a higher degree of effectiveness than it required of those industries classified as not especially dangerous to the health.

We are warranted in stating that the legislature passed and amended the act in question because society recognized the economic and social need therefor. In view of the conditions then prevailing in industry as regards the different varieties of occupational diseases and the common knowledge that certain industries were much more dangerous to the health of persons engaged therein than others, we can not say that the legislature did violence to the State or Federal constitution when it provided different remedies for the different classes of industries, as it did in sections 1 and 2. In 1911 the available medical and industrial knowledge concerning occupational diseases was not especially voluminous or precise. In 1923, twelve years later, the legislature further emphasized the differences between the industries it had previously catalogued in sections 1 and 2 by re-affirming its belief that the industries mentioned in section 2 were especially hazardous to health. In the light of twelve years' additional accumulation of knowledge by the medical and industrial world, the legislature in 1923 provided that employees in extra-hazardous industries mentioned in section 2 should be placed upon the same plane as employees who suffered accidental injuries arising out of and in the course of their employment. This was accomplished by amending section 15, whereby the legislature made the provisions of the Workmen's Compensation act applicable to all cases of occupational disease arising out of industries named in section 2. For the purpose of effecting this result an occupational disease was given the status of an accidental injury arising out of and in the

course of employment. Certain advantages accrued to the employee in such industries. He was relieved from the difficulty of establishing the time he incurred his occupational disease, and thus overcame the hurdle of the Statute of Limitations, which often defeated his right of recovery under section 15 as it stood before the amendment. The employee also did not have to contend against the doctrines of contributory negligence and assumed risk. The employer was not without gain, as he lost the fear of being liable in damages for large amounts, and the comparative certainty of the payment of reasonable amounts as compensation was a boon both to employers and employees.

It must be assumed that in amending section 15 the legislature took notice of the fact that the industries described in section 2, by reason of their hazardous nature, were prolific sources of large numbers of occupational diseases having very serious consequences. Since it left section 1 untouched by the amendment of 1923 and in nowise changed the mechanics of recovery for occupational diseases arising under it, the legislature must have deemed that prevailing conditions required no further changes. Almost ten years have elapsed since that amendment without the law being further changed in any way. Whether the increase of medical and industrial knowledge concerning silicosis would warrant the transference of appellant's business from section 1 to section 2 of the Occupational Disease act is for the legislature, and not for this court, to say. The wisdom or lack of wisdom shown by the legislature in failing to include the silica industries in the classification in section 2 of the Occupational Disease act does not concern this court. *People* v. *Elerding,* 254 Ill. 579; *Kelley* v. *St. Louis Smelting Co. supra.*

The constitutional objections, both State and Federal, all depend primarily upon the contention of appellant that the distinctions made between industries in sections 1 and 2 of the Occupational Disease act of 1911 and its amend-

ments are arbitrary and discriminate between persons in substantially the same position. In numerous instances this court has decided similar questions where the precise constitutional objections were made. Section 3 of the Workmen's Compensation act of 1917 was attacked upon the ground that the legislature had no right to make the act apply mandatorily to enterprises or businesses which the legislature called extra-hazardous. The law was upheld as a valid exercise of the police power of the State. (*McNaught* v. *Hines,* 300 Ill. 167.) In *Weksler* v. *Collins,* 317 Ill. 132, we held that section 42 of the Motor Vehicle act, (Laws of 1923, p. 543,) regulating the use of taxicabs in cities of 100,000 or more inhabitants, did not make an arbitrary classification, but, on the contrary, was a classification based upon a rational difference of situation or condition and did not violate the equality clause of the fourteenth amendment to the Federal constitution. This clause, we said, did not deprive a State of the power to use broad discretion in making classifications in the interests of public safety, health, morals and the promotion of the general welfare. The Occupational Disease act does not bestow any special privilege by special legislation, contrary to section 22 of article 4 of the State constitution. The provisions of the act respecting each class impinge uniformly upon all within the class. This is all that is required. *People* v. *Callicott,* 322 Ill. 390; *People* v. *Sisk,* 297 id. 314.

Section 1 of the Occupational Disease act placed upon appellant the duty to "adopt and provide reasonable and approved devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work or process." Appellee's case is founded upon an alleged breach of this duty. Appellant takes the position that appellee has failed to show by the evidence that there are reasonable and approved means, methods and devices which appellant failed to use in its plant, and consequently no breach of duty was established. Inasmuch as

the trial court overruled a motion by appellant for a directed verdict, a question of law respecting the evidence arises and not a question of fact. Did the evidence in the case, considered in a light most favorable to Clouse, tend to support his action? If there was such evidence it was the court's duty to submit it to the jury. (*Shannon* v. *Nightingale,* 321 Ill. 168.) A review of the evidence herein shows that the nature of appellant's business unavoidably caused the creation of large amounts of silica dust. The work that Clouse was called upon to do in the discharge of his duties took him into the dust-laden atmosphere of the plant. Appellant realized its duty, under the law, to install preventive or protective apparatus or devices for the benefit of its employees. This it did. But the evidence also shows that the apparatus or devices did not function at all times and were ineffective in certain portions of the plant. It is also shown that no protective apparatus was installed to protect Clouse and other employees from dust arising and charging the air in the box-cars when they were cleaned prior to being loaded with silica and from the dust arising during the loading. In cleaning and loading the box-cars appellant relied upon the employees engaged in that work to protect themselves with the respirator masks furnished. Clearly, there was sufficient evidence to warrant the trial court's refusal to direct a verdict, as the evidence showed the legal duty, the breach thereof and the consequent injury to Clouse.

The evidence also disclosed that Clouse at times failed to wear the protective respiratory mask furnished him by appellant. The failure of Clouse to make full use of this mask on many occasions would show that he was contributorily negligent were it not for other factors. The evidence concerning the efficiency of the masks under the conditions when they were used presented a proper question for the jury to decide, as it was also shown that the dust concentrations were so heavy in certain parts of the plant

or on certain occasions that the masks became clogged in a short time. Further, appellee contends that the failure of appellant to protect Clouse in accordance with the provisions of section 1 was a willful failure, by reason whereof appellant could not avail itself of the defenses of contributory negligence and assumed risk. The Occupational Disease act, as amended, provides that a willful violation of the provisions of section 1 resulting in injury to an employee not only affords such employee a remedy by a suit at law but also renders the violator liable to a fine under section 14. There is no question but that the duty laid upon the employer by section 1 is a mandatory one. The word "willful," when used in a statute relating to the failure to perform a mandatory duty, has been held to mean a conscious violation of duty. An act consciously omitted is in the eyes of the law willfully omitted. (*Peebles* v *O'Gara Coal Co.* 239 Ill. 370; *Marquette Coal Co.* v. *Dielie,* 208 id. 116; *Odin Coal Co.* v. *Denman,* 185 id. 413.) No argument can overcome the fact, as shown by the evidence, that appellant well knew the dusty conditions of its plant and that it consciously recognized this condition by the installation of protective or preventive apparatus and devices to reduce the menace of dust-laden air. By its verdict the jury showed its belief that appellant consciously failed to fully perform the duties imposed upon it by section 1 in failing to "provide reasonable and approved devices, means or methods for the prevention of such industrial or occupational diseases" as silicosis. The jury was warranted in believing from the evidence that the means employed by appellant to reduce the dust hazard were insufficient and inefficient, and that it knew, and thus willfully permitted, this harmful condition to exist. The questions, therefore, of contributory negligence and assumed risk do not enter into the case.

Appellant further contends that section 15 as amended in 1923 is ambiguous. With this contentiton we cannot

agree, as the meaning of the section seems plain and easily understood. All doubts or uncertainties arising from the language of the act must be resolved in favor of its validity. There must be a reasonable doubt that the power of the legislature has been exceeded before this presumption of validity falls. (*Sherman* v. *People,* 210 Ill. 552.) In seeking to arrive at the intention of the legislature we will regard existing circumstances, contemporaneous conditions, what object the legislature sought to attain, the necessity of the act and the language used therein. (*Smith* v. *County of Logan,* 284 Ill. 163; *People* v. *Highway Comrs.* 270 id. 141.) We must keep in mind that the several provisions of the statute should be construed together in the light of its general purpose and give effect to the intent and purpose of the legislature. *Public Utilities Com.* v. *Monarch Co.* 267 Ill. 528.

Objection is made by appellant that the trial court erroneously permitted an expert medical witness to reply to a hypothetical question where his answer was partly based upon a history of the case received from the injured employee. Appellant further urges that where an injury is disputed an expert cannot testify that the negligent act caused the injury. These points are without merit, as appellant virtually conceded in both its printed and oral arguments what the record so abundantly discloses—*i. e.,* that Clouse was suffering from silicosis. The jury found that Clouse incurred this occupational disease while in the course of his employment by appellant. Nothing appears either in the law or the facts which would warrant an opposite conclusion.

For the reasons given, the judgment of the circuit court of LaSalle county is affirmed. *Judgment affirmed.*

DUNN and DeYOUNG, JJ., dissenting.