(No. 32016.—

JACOB H. JAFFE, Appellant, *vs.* WALTER W. CRUTTENDEN, Appellee.

*Opinion filed May 22, 1952—Rehearing denied September 15, 1952.*

ALFRED M. LOESER, of Chicago, for appellant.

HENEHAN & McINERNEY, of Chicago, (THOMAS P. HENEHAN, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The plaintiff, Jacob H. Jaffe, brought an action in the circuit court of Cook County against Walter W. Cruttenden and eight others, copartners doing business as Cruttenden & Co., to recover $3000, the purchase price of 200 shares of common stock of American Bantam Car Company, which he bought from the firm on January 15, 1946, together with his attorney's fees. From an adverse judgment he appeals directly, the constitutionality of a statute being involved.

The gist of plaintiff's complaint is that the stock was a Class "D" security under the Illinois Securities Law, (Ill. Rev. Stat. 1951, chap. 121½, par. 96 *et seq.,*) and that the requirements of the act relating to the sale of such securities were not complied with. Plaintiff alleged that, on March 12, 1946, he tendered to Cruttenden & Co.

the 200 shares and demanded the return of the purchase price, and that his demand was refused. He also alleged that he purchased the shares from defendants in reliance upon false representations made by them. Cruttenden, the only defendant served with process, answered, alleging that the sale was made in accordance with paragraph 7 of section 5 of the statute, and that the stock was therefore a Class "B" security, the sale of which was exempted from the requirements of the act. Plaintiff moved to strike the answer upon the ground that paragraph 7 of section 5 was unconstitutional in respects specifically enumerated. Upon denial of this motion, plaintiff replied to the answer, making the same allegations of unconstitutionality. Evidence was heard by the court without a jury, the issues were found for defendant, and judgment was entered for defendant and against plaintiff.

Plaintiff's charge of actual fraud, decided adversely to him in the trial court, is here abandoned. The issues on this appeal are therefore: (1) the constitutionality of paragraph 7 of section 5 of the Illinois Securities Law, (Ill. Rev. Stat. 1951, chap. 121½, par. 100,) and (2) the adequacy of the proof of compliance with the requirements of that paragraph.

Since its original enactment in 1919, section 5 of the Illinois Securities Law has exempted from the operation of the act sales of securities taking place under described circumstances. Securities so sold are designated as Class "B" securities. Unlike the other classes of securities fixed by the act, this class is determined by the circumstances of the sale, rather than by the inherent characteristics of the security sold. (*People* v. *Wilson,* 375 Ill. 506.) Paragraph 7 of section 5, which was added by amendment in 1945, includes in this category of exempted sales the resale by a broker of a security acquired in the ordinary course of business. Both the acquisition price and the resale price are required to be "reasonably related" to the then current

market prices. Information as to the issuer of the security is required to have been published in "a recognized manual of securities," such information to include a balance sheet as of a date not more than fifteen months prior to the resale, and an income account for a period of not less than three years next prior to the date of the balance sheet. Alternatively, the information required may be furnished in writing to the Secretary of State, "in form and extent acceptable" to him.

Plaintiff's attack upon the paragraph's constitutionality is directed against three particular phrases: (1) "reasonably related to the current market price," describing the prices at which the security must be acquired and sold by the dealer to qualify for the exemption; (2) "recognized manual of securities," describing the publication in which information about the corporation issuing the security is set forth, and (3) "in form and extent acceptable to the Secretary of State," describing information to be furnished the Secretary of State as an alternative to (2). Plaintiff contends that phrases (1) and (2) are so vague that they violate the due-process clauses of the Federal and Illinois constitutions; that the alleged absence of a standard renders phrase (3) an invalid delegation of legislative power, and that phrase (2) also constitutes a special privilege or immunity, in violation of section 22 of article IV of the Illinois constitution.

The asserted vagueness will be considered first. It is well settled that the duty imposed by a statute must be prescribed in terms definite enough to serve as a guide to those who must comply with it. (*United States* v. *Petrillo, 332 U.S. 1; Vallat* v. *Radium Dial Co.* 360 Ill. 407.) To establish conclusively the invalidity of the present statute, plaintiff relies upon *Boshuizen* v. *Thompson & Taylor Co.* 360 Ill. 160, and *Vallat* v. *Radium Dial Co.* 360 Ill. 407. In those cases this court held invalid for vagueness section 1 of the Occupational Diseases Act, which required

employers to adopt and provide "reasonable and approved devices, means or methods for the prevention of such occupational and industrial diseases." Plaintiff urges that this condemnation for uncertainty of the word "reasonable" when used to describe devices for the protection of health compels a similar result in this case. But the circumstances in which the word was there used differ widely from those here involved. There, as the court pointed out, the use of the phrase "reasonable and approved devices, means or methods for the prevention" of occupational diseases left the statutory requirement at large, in a field which encompassed such diverse factors as the structure of buildings, the availability and effectiveness of mechanical devices, and the techniques of preventive medicine. Here, the range of the statute is tightly circumscribed. The word "reasonable" concerns the relation between the acquisition price and the sale price, on the one hand, and the market price on the other.

Reasonableness is not, under all circumstances, a prohibited statutory standard. Compare: *United States* v. *Shreveport Grain & Elevator Co.* 287 U.S. 77, 81, 82, ("reasonable variations" in weight or measure); *Nash* v. *United States*, 229 U.S. 373, 376-378, (unreasonable or undue restraints of trade); *Waters-Pierce Oil Co.* v. *Texas* (No. 1), 212 U.S. 86, (contracts "reasonably calculated" or which "tend" to fix prices); *Weeds, Inc.* v. *United States*, 255 U.S. 109, (exacting "excessive prices for necessaries"). Nor do the cases relied upon by plaintiff preclude the legislative use of the word "reasonable" in all fields other than those in which its use was sancentioned at common law. Indeed, such a holding would be obviously incorrect. See: *State* v. *Langley*, 53 Wyo. 332, 84 Pac. 2d 767; *People* v. *Curtiss*, 116 Cal. App. 771, 781, 300 Pac. 801, 805, holding that "reasonableness" as "the standard of an act—which can be determined objectively from the

circumstances—is a common, widely used, and constitutionally valid standard in law."

The crucial consideration is whether the language used "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more." (*United States* v. *Petrillo,* 332 U.S. 1, 8.) No reason appears why dealers in securities, of ordinary intelligence, would be unable to know when their purchases or sales were not "reasonably related to the current market price." That marginal cases may present difficulties does not mean that the language is too ambiguous to define the duties and conditions involved. (*United States* v. *Petrillo,* 332 U.S. 1, 7.) The language of Mr. Justice Holmes in *United States* v. *Wurzbach,* 280 U. S. 396, 399, is particularly apt: "Whenever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk." And in *Nash* v. *United States,* 229 U.S. 373, in upholding the Sherman Anti-Trust Act with its "rule of reason" standard, the court stated: "The law is full of instances where a man's fate depends upon his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree."

The foregoing observations apply with like force to the question of the validity of the phrase "recognized manual of securities," against the attack of uncertainty. The legislature, in providing for the exemption in paragraph 7, added the requirement that the securities sold be those for which information as to the issuer is published in a recognized manual, the theory being that the publicizing of the information decreased the likelihood of fraud. It would have been improper, and perhaps invalid under section 22

of article IV of our constitution, to have specified three or four such manuals. Moreover, this would have defeated the obvious legislative purpose to include *all* recognized manuals.

The meaning of the word "recognized,"—here, "acknowledged with approval,"—is sufficiently clear. Plaintiff, however, vigorously asserts that it is impossible to know by whom the recognition is to be had, and that therefore the phrase must be stricken as vague. The plain answer to this argument is that the legislature had reference to recognition by all those participating in the securities business, whether dealers, brokers, investment counselors, or private investors such as plaintiff. No reason appears why competent evidence cannot be introduced, as it was in the case at bar, to establish the status of the manual in question. Such evidence, of course, need not show that the particular investor or every person engaged in securities transactions recognize the manual, but only its general evaluation. Here, the only evidence upon the subject was that of defendant's expert witness Breckenridge, who testified that there are three such recognized or standard manuals. Thus, there is nothing in the record before us in any way indicating that in the field of securities the scope of the phrase "recognized manuals" is uncertain or vague.

Plaintiff's argument that the status thus accorded a "recognized manual of securities" confers a privilege or immunity in violation of section 22 of article IV of the Illinois constitution merits but little consideration. *Albers* v. *Lamson*, 380 Ill. 35, sustaining the exception to a criminal gambling provision (Ill. Rev. Stat. 1951, chap. 38, par. 330,) of certain transactions involving boards of trade and stock exchanges, and *Stewart* v. *Brady*, 300 Ill. 425, finding that no special privilege was created by the exemption from the Securities Law of securities listed on the

stock exchanges of certain specifically named cities, are clearly analogous. Further, *Hall* v. *Geiger-Jones Co.* 242 U.S. 539, and *Merrick* v. *Halsey & Co.* 242 U.S. 568,— two decisions relied upon in *Stewart* v. *Brady,* 300 Ill. 425, 440-441,—sustained provisions in securities statutes which exempted securities that had been published in "regular market reports" (*Hall case*) or that had been listed in a "standard manual of information approved by the commission." (*Merrick case.*)

Plaintiff's final constitutional objection rests upon an alleged invalid delegation of authority to the Secretary of State embodied in the phrase, "in form and extent acceptable to the Secretary of State." But in the case at bar the defendant does not claim exemption because of information furnished to the Secretary of State but rather upon the alternative ground of the publication of information in an appropriate manual. Since plaintiff does not and cannot maintain that he is directly aggrieved by this delegation provision, he is confronted with the cardinal maxim that one who attacks a statute as unconstitutional must bring himself within the class as to whom the law is unconstitutional. (*City of Elmhurst* v. *Buettgen,* 394 Ill. 248.) It follows that the constitutionality of the delegation provision is not properly before us unless it can be said to be so related to the other portions of the paragraph that the General Assembly would not have enacted the others without this one. (*City of Elmhurst* v. *Buettgen,* 394 Ill. 248; *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236.) In view of the fact that the challenged provision is merely an alternative to one of several conditions, this is clearly not the case here. (Cf. *Merrick* v. *Halsey & Co.* 242 U.S. 568, 590.) The legislature having established the exemption upon the fulfillment of any one of several alternatives, it is difficult to perceive how the invalidity of one such alternative can affect the others. *Ohio Oil Co.* v.

*Wright,* 386 Ill. 206, relied upon by plaintiff, is not in point. An alternative method was there established by the statute to come into operation should other provisions be held unconstitutional or invalid. Under these circumstances, the court held that the alternative provision amounted to a delegation of legislative powers to the courts, contrary to article III of the constitution. The situation here is manifestly different.

. Plaintiff also contends that the judgment should be reversed because defendant failed to sustain the burden of proving compliance with paragraph 7 in the sale of the stock. First, plaintiff argues that defendant's witness Breckenridge was not qualified to testify to the status of "Moody's Manual of Investments" as a "recognized manual of securities," since he does not represent the viewpoint of the ordinary purchaser of securities. The record shows, however, that Breckenridge, as a leading investment counsel, had complete familiarity with the sources of information commonly used in the securities business. In view of these and other qualifications adduced, Breckenridge's testimony upon the subjects involved was properly received in evidence. The contention that his testimony was upon the ultimate conclusion to be drawn by the court is not open to consideration, since the record shows no such objection was made during the trial, and, indeed, formulation of the questions in the words of the statute was actually invited by plaintiff's counsel.

Plaintiff next contends that there was a failure of proof because defendant was unable to say when or where his firm bought the precise securities sold to plaintiff or the prices paid therefor. Although the record shows the impossibility of determining which particular certificates were transferred to the plaintiff, the testimony of McGrath, defendant's office manager, established that the 200 shares sold plaintiff were transferred out of a block of 1000, and then fixed the dates of acquisition and the prices paid for all

shares composing the block. Since a comparison was made between these prices and the current market prices on the designated dates, plaintiff's contention is without merit.

Finally, plaintiff objects to the utilization of the information services of the National Quotation Bureau, Inc., as the means of establishing the current market price. Inasmuch as transactions in unlisted securities take place in the offices of brokers, ("over-the-counter market,") the price of each of these transactions is not recorded and published as in the case of activities on stock exchanges. To develop and present information on unlisted securities, National Quotation Bureau, Inc. gathers from and distributes to subscribing dealers and brokers quotations of the bid and asked prices of such securities. These quotations, being the prices at which the brokers are willing to trade with other brokers, are wholesale figures and are generally some five per cent lower on the offering side of the market than the retail prices quoted to the customers.

Plaintiff argues that only evidence of actual sales could properly establish the current market price, and that, therefore, the introduction of the quotation service, consisting as it does of offers to buy and sell, should not have been admitted. While the quotation service is admittedly not conclusive evidence of the market value of unlisted securities, the record does disclose that the service, with its "wholesale prices," is used by the great majority of registered brokers and dealers as an indication of the prices at which brokers are willing to do business with other brokers, and that it is recognized by several governmental authorities, being employed by the Securities and Exchange Commission, the Bureau of Internal Revenue, and the auditors of various States for purposes of evaluation. (See, *e.g.*, *Charles Hughes & Co., Inc.* 13 S.E.C. 676, 678, 679; *Allender Co., Inc.* 9 S.E.C. 1043, 1057-1058.) At the least, as stated in the *Charles Hughes & Co. case,* "* * * these quotations are some indication of the prevailing market

price." Accordingly, in view of the figures here derived from the quotation service, the close approximation of the prices paid by defendant to the range there listed, and the complete absence of any contrary evidence, the finding of the trial judge upon these factual points should not be disturbed. "Controverted facts may be said to be established when the evidence, though circumstantial, creates a greater or less probability leading, on the whole, to a satisfactory conclusion. This is all that can reasonably be required." *Rosenfield* v. *Industrial Com.* 374 Ill. 176, 183-184; *Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 Ill. 96.

The judgment of the circuit court of Cook County is right, and it is affirmed.                    *Judgment affirmed.*