(No. 34523.—

GOLDEN KENNERLY, Appellee, *vs.* SHELL OIL COMPANY, Appellant.

*Opinion filed March 20, 1958—Rehearing denied May 23, 1958.*

432

House, J., took no part.
Klingbiel, J., dissenting.

Oehmke, Dunham & Boman, of East St. Louis, (Thomas Q. Keefe, of East St. Louis, of counsel,) for appellant.

Moran & Beatty, of Granite City, (George J. Moran, of counsel,) for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

Golden Kennerly brought this action against the Shell Oil Company to recover for personal injuries that he suffered while employed as a steamfitter welder by the Foster Wheeler Corporation, which was constructing a large distillation unit for Shell Oil Company on Shell's

property. On April 7, 1953, while plaintiff was welding a water line he fell from a scaffold that was built by other employees of Foster Wheeler. He landed 17 or 18 feet below and suffered serious and permanent injuries. The jury returned a verdict for the plaintiff, and judgment was entered on the verdict.

Defendant appeals directly to this court. Plaintiff's right to recover is based upon a claimed violation of the Scaffold Act. (Ill. Rev. Stat. 1957, chap. 48, pars. 60-69.) Defendant contends that the Scaffold Act, properly construed, does not make it liable; that the Scaffold Act has been superseded by the Workmen's Compensation Act, and that it is so vague and indefinite as to violate due process and improperly to delegate legislative authority to those who are charged with its administration. It also argues that a wilful violation of the act was not proved, and that the plaintiff has been allowed a double recovery for his injuries.

The Scaffold Act relates to equipment used in the erection or repair of buildings and other structures. It imposes duties upon "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection * * * of any building, * * * or other structure * * * ," and it provides that for "any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; * * * ." (Ill. Rev. Stat. 1957, chap. 48, par. 69.) The defendant contends that the statute imposes liability only upon the person "having charge" of the work, and that it is not liable because the work was being done by an independent contractor, Foster Wheeler Corporation, the plaintiff's employer.

If the question were one of first impression, the contention thus urged would be a serious one, for the liability that the statute imposes is stated in the disjunctive. There

434

is, however, a long history of interpretation that refutes the defendant's position. The statute was enacted in 1907. (Laws of 1907, p. 312.) In 1911 the first case under it, *Claffy* v. *Chicago Dock and Canal Co.* 249 Ill. 210, 228 U.S. 680, came to this court. The action was brought by the widow of a deceased workman against the contractor who was constructing the building, and the owner of the building, Chicago Dock and Canal Co. After a verdict of $10,000 had been returned against both defendants, the contractor paid the plaintiff $2,500 and received a covenant not to sue. On appeal the owner contended that it was not liable because the actual work was being done by several different contractors. The court said: *"In our opinion it was intended by section 7 to, and said section 7 does, impose upon both the contractor and the owner the duty of complying with the provisions of said section so far as civil liability is concerned,* but under the facts in this case the owner never parted with the control and supervision of the building to any contractor," but retained control of the construction through its own agent, as architect.

The language quoted above was deliberately used by the court after it had discussed and quoted from a decision of the Court of Appeals of New York that had reached a different conclusion under a similar statute. On the basis of this court's interpretation in the *Claffy case,* the Appellate Court in 1912 reversed its earlier construction of an ordinance of the city of Chicago that imposed liability on "all owners, contractors and builders or persons having control or supervision of all buildings in course of erection." (*O'Donnell* v. *Riter-Conley Mfg. Co.* 172 Ill. App. 601.) After quoting the language from the *Claffy case* that is italicized above, the Appellate Court continued, pp. 608, 609: "It is true that in that case the court further states that the fact there was, that there was no general contractor having a contract for the construction of the entire building, but separate contracts were let to different

contractors for the different kinds of work to be done. Nevertheless, as we read the opinion, the court did not intend to make that question of fact controlling in the construction placed by it upon the statute above quoted. The fact that there were separate contracts was only cited as an additional argument going to show that the contention made in that case could not even be sustained on the facts. * * * A similar construction was placed by the Supreme Court upon the fire escape statute which made it the duty of 'owners, lessees or occupants' to construct such fire escapes. *Landgraf* v. *Kuh,* 188 Ill. 484; *Arms* v. *Ayer,* 192 Ill. 601; *Streeter* v. *Western Scraper Co.* 254 Ill. 244."

In 1923 this court reaffirmed the construction adopted in the *Claffy case,* saying: "The act of 1907 imposes upon the contractor and the owner, as well as upon sub-contractors, foremen or others engaged in the work, the duty of complying with the provisions of the act so far as the civil liability is concerned. (*Claffy* v. *Chicago Dock Co.* 249 Ill. 210.) Before the enactment of this law, where work was done under such circumstances as to constitute the person doing it an independent contractor, the owner was not liable for an injury caused by the negligence of such independent contractor. (*Scammon* v. *City of Chicage,* 25 Ill. 424; *Pfau* v. *Williamson,* 63 id. 16; *Jefferson* v. *Jameson & Morse Co.* 165 id. 138.) Since the enactment of this law the owner of the property and every contractor and sub-contractor are equally bound by the act to comply with its provisions, and in case of willful failure are liable to the party injured for any direct damages sustained by reason of such failure. This liability to the person injured the owner or original contractor cannot evade by any contract with the contractor or sub-contractor." *John Griffiths & Son Co.* v. *National Fireproofing Co.* 310 Ill. 331, 335.

The Scaffold Act deals with highly dangerous activities. It has been regarded from the outset as intended to fix an independent, nondelegable duty of compliance upon the

owner of the property and upon each contractor and sub-contractor engaged in the work. Neither this court nor the Appellate Court has deviated from this construction of the statute, first announced almost fifty years ago. In the face of this construction, the General Assembly has re-enacted the section without changing the language that imposes the liability here involved. (Laws of 1951, p. 1309.) We are not at liberty to change the meaning of that language now.

The defendant also argues that the Scaffold Act was superseded by the Workmen's Compensation Act which was adopted in 1913. The argument is that the Workmen's Compensation Act has consistently limited the right of employees under the act to recover against a third-party tort-feasor to those cases in which the injury was not caused by the negligence of the employer. Section 5(b) of that act provides: "Where the injury or death for which compensation is payable under this Act was not proximately caused by the negligence of the employer or his employees and was caused under circumstances creating a legal liability for damages on the part of some person other than the employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act." Ill. Rev. Stat. 1953, chap. 48, par. 138.5.

The defendant reads this section as prohibiting an action against a third party in any case in which the injury was proximately caused by the negligence of the employer. This reading of the statute, however, cannot be applied to an action under the Scaffold Act. That act fixes its own standard of liability. It deals with work that the General Assembly has regarded as particularly hazardous, and its purpose is to reduce the hazard to the fullest possible extent. To that end it has imposed a duty upon both the contractor and the owner. The duty of each is independent of the duty of the other, and neither can escape his statu-

tory liability by pointing to the other's breach of duty. If injury is caused by a defendant's "wilful violation" of the act or by his "wilful failure to comply with any of its provisions," he is liable regardless of the fault or liability of any other. Cf. *John Griffiths & Son Co.* v. *National Fireproofing Co.* 310 Ill. 331.

Since we hold that the Scaffold Act is applicable to the defendant as owner, we are brought to the question of its constitutionality. Section 1 of the act provides: "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, * * * or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon."

Defendant contends that the act violates the due-process provisions of the State and Federal constitutions because it is incomplete, vague and indefinite, and fails to establish a clear and intelligible standard of duty. It is also argued that the act is unconstitutional because it empowers common-law juries to pass upon questions of law and delegates legislative power to judges and juries, and so violates article III of the constitution of Illinois. Other provisions of the act, not directly involved in this case, are said to be unconstitutional because they delegate legislative powers to an administrative officer.

The Fire Escape Act of 1907 was attacked on grounds like those that the defendant advances here, and its validity was sustained in *Arms* v. *Ayer,* 192 Ill. 601. The court there said: "Statutes and city ordinances providing for fire-escapes are usually somewhat general in their enactments, and necessarily so, for the reason that it is impossible for the legislature to describe in detail how many fire-

escapes shall be provided, how they shall be constructed and where they shall be located in order to serve the purpose of protecting the lives of occupants, in view of the varied location, construction and surroundings of buildings; * * * . In *People* v. *Reynolds,* 5 Gilm. 1, it was held that to establish the principle that whatever the legislature may do it shall do in every detail or else it shall go undone, would be almost to destroy the government."

That the same difficulty confronted the legislature in drafting the Scaffold Act was pointed out in *Schultz* v. *Henry Ericsson Co.,* 264 Ill. 156, 164: "No attempt is made to define what shall be considered or shall constitute a safe, suitable and proper scaffold, which, from the very nature of things, could not well be done, for what might be a safe, suitable, and proper scaffold for one kind of work under one set of conditions or circumstances would be wholly inadequate, insufficient and unsafe for doing another kind of work under other conditions or circumstances and at a different height from the ground." The constitution does not prevent the legislature from dealing with such a situation. *Department of Public Works and Buildings* v. *Lanter,* 413 Ill. 581, 589.

The defendant bases its argument on the cases that invalidated the Occupational Disease Act of 1911, primarily *Parks* v. *Libbey-Owens-Ford Glass Co.* 360 Ill. 130; *Boshuizen* v. *Thompson & Taylor Co.* 360 Ill. 160, and *Vallat* v. *Radium Dial Co.* 360 Ill. 407. These cases have been frequently cited to the court, but rarely cited by it. They were distinguished in *City of Chicago* v. *Reuter Bros. Iron Works, Inc.,* 398 Ill. 202, 205, and in *Jaffe* v. *Cruttenden,* 412 Ill. 606, 609. The Scaffold Act does not deal with the novel and the unfamiliar, as the Occupational Disease Act was thought to do in the cases upon which the defendant relies. (See 360 Ill. at 166, and 360 Ill. at 411.) Rather, it is concerned with the familiar and the commonplace. And if, as defendant seems to argue, due process is

violated whenever a jury is called upon to apply a generalized standard such as is here involved to particular facts, the entire common law of negligence is in need of revision. (See *Jaffe* v. *Cruttenden*, 412 Ill. at 610.) We hold that the act is valid.

The defendant contends that the evidence did not prove a "wilful violation" of the Scaffold Act, or a "wilful failure to comply" with it. It also argues that this court erred when, in *Schultz* v. *Henry Ericsson Co.*, 264 Ill. 156, 166, it said: "The word 'willfully' is synonymous with 'knowingly,' and to constitute a willful violation of the statute it is not necessary that there should have been 'a reckless disregard' of its provisions. The employer is liable not only when the dangerous conditions are known to him, but also when by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known to him. *Peebles* v. *O'Gara Coal Co.* 239 Ill. 370." We see no reason to depart from this statement. It gives to the word "wilful" as used in the Scaffold Act the same meaning that was given to the same word in the Mining Act, (*Aetitus* v. *Spring Valley Coal Co.* 246 Ill. 32, 38; *Peebles* v. *O'Gara Coal Co.* 239 Ill. 370, 374), and in the Occupational Disease Act of 1911. (*First National Bank* v. *Wedron Silica Co.* 351 Ill. 560, 570.) In this case the proof shows that the floor of the scaffold from which the plaintiff fell was made of loose boards and that it had no handrail. Defendant knew that scaffolds were being used, and it can not escape the mandatory duty that the statute imposes by closing its eyes to their condition.

Defendant's final contention is that "Kennerly should not be permitted to recover from his employer, Foster Wheeler Corporation, and Shell Oil Company for the same injury." On cross-examination of the plaintiff, the defendant put before the jury the amounts that had been paid for medical expenses by the plaintiff's employer and the amounts that he had received and expected to receive

under the Workmen's Compensation Act. The plaintiff points out that the jury probably took those amounts into account in determining plaintiff's damages. However that may be, the question of the ultimate rights of the plaintiff, the defendant and the employer were not before the court for determination in this proceeding.

The judgment of the circuit court of St. Clair County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE HOUSE took no part in the consideration or decision of this case.

Mr. JUSTICE KLINGBIEL, dissenting:

I cannot agree with the construction of the statute adopted by the majority of the court. The suit is based upon a violation of section 1, which requires generally that "all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, * * *." Ill. Rev. Stat. 1957, chap. 48, par. 60.

The language relied upon to impose liability upon an owner *per se* is found in the first paragraph of section 9, which deals with criminal penalties. It provides as follows: "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof, and any *such* owner, contractor, sub-contractor, foreman or other person violating any of the provisions of this act shall upon conviction thereof be fined not less than $25, nor more than $500 or imprisoned for not less than three months nor more than two years or both fined and imprisoned in the discretion

of the court." (Emphasis supplied.) It seems evident to me that only those owners "having charge" of the work are subjected to the detailed requirements as to its performance prescribed by the various sections of the act. The penalty for violation is expressly. limited to *"such* owner, contractor, sub-contractor, foreman or other person." The word "such" can refer only to the phrase "having charge of" the work, and clearly shows an intent to confine the statutory duties to persons whose right to control or supervise the work makes it possible to comply therewith.

The decisions of this court relied upon for the opposite conclusion involved issues different from those in the case at bar. In *Claffy* v. *Chicago Dock and Canal Co.* 249 Ill. 210, a workman fell down an unguarded elevator shaft, and the action was based upon a violation of section 7. That section in terms requires the owner to cause such shafts to be enclosed by guard rails, and this court was careful to point out that the decision concerned only that section of the act. Its wording is as follows: "If elevating machines or hoisting apparatus are used within a building in the course of construction for the purpose of lifting materials to be used in such construction, the contractors or owners shall cause the shafts or openings in each floor to be enclosed or fenced in on all sides by a substantial barrier or railing at least eight feet in height." (Ill. Rev. Stat. 1957, chap. 48, par. 66.) It is apparent by its terms that the language quoted and italicized in the majority opinion was concerned only with the provisions of section 7, and was based upon the wording therein imposing a special duty upon the "contractors or owners." The present case does not involve elevating machines or hoisting apparatus, nor are we presented with provisions similar to those construed in the *Claffy case.* Moreover, the language quoted from the opinion in that case not only related to a different section of the statute but constitutes mere *dictum,* since the

owner in the *Claffy case* in fact had control and supervision over the work. The provisions applicable here are found in section 9. Unlike those of section 7, they do not purport to impose duties upon an owner as such.

The remaining Supreme Court decision relied upon in the majority opinion is *John Griffiths & Son Co. v. National Fireproofing Co.* 310 Ill. 331, wherein a subcontractor agreed to indemnify the principal contractor against any liability for injury caused by the subcontractor's negligence. An employee of the subcontractor was injured when material fell from an unstable scaffold and struck him. The contractor paid a judgment recovered against it by the injured workman, and brought suit against the subcontractor under the indemnity contract. The subcontractor claimed that under the statute the contractor had an absolute duty of inspecting the scaffold, which it disregarded, and that the contract was against public policy because it purported to indemnify against the consequences of a violation of law. In holding the contract to be valid and enforceable, we pointed out that the argument advanced would apply equally to insurance policies, and that the contract did not undertake to indemnify against an illegal act. The sole issue concerned the validity of the contract of indemnity, and the question of liability to an injured person under the statute was not presented. In my opinion the present interpretation is neither required by precedent nor warranted by the language of the statute.

I must also express my disagreement with the conclusion that a willful violation was shown. If "willfully" is synonymous with "knowingly," as the court apparently concedes, it is knowledge of the *condition,* not mere knowledge that scaffolds were being used, which determines willfulness. The language quoted from the opinion in *Schultz v. Henry Ericsson Co.* 264 Ill. 156, was used in disposing of a contention that knowledge of the danger is required. The court held that since the defendant in that case had con-

structed the scaffold it had knowledge of the condition, and that "Notice of the conditions is notice of the dangerous conditions, if the conditions are, in fact, dangerous." The language quoted in the present opinion, when read in its context, means that willfulness may be present if there is knowledge of the conditions themselves, even though there is no notice of the fact that they are dangerous. The majority opinion in the case at bar goes much farther. It announces the proposition that a willful violation is present whenever the defendant, by the exercise of reasonable care, could have discovered the condition of the scaffold. This is the test of mere negligence, not of willfulness.

Under the interpretation of the statute adopted by the majority, a person who engages a contractor to paint or repair his house may be subjected not only to civil liability but to criminal liability as well, for the latter's failure to properly construct a scaffold or other piece of equipment. Such a departure from recognized bases of liability should not be inferred in the absence of clear and explicit statutory command, and in my opinion it finds no justification in the language of the present provisions.