James W. PANKEY, Plaintiff,

v.

HIRAM WALKER & SONS, Inc., a Foreign Corporation, Defendant.

Civ. A. No. P-2158.

United States District Court
S. D. Illinois, N. D.

Nov. 26, 1958.

McConnell, Kennedy, McConnell & Morris, Peoria, Ill., for plaintiff.

Miller, Westervelt & Johnson, Peoria, Ill., for defendant.

MERCER, Chief Judge.

On July 18, 1958, plaintiff, James W. Pankey, filed a complaint in the Circuit Court of Peoria County, Illinois, praying judgment against the defendant, Hiram Walker & Sons, Inc., for alleged damages for personal injury.

In material part the complaint alleged: That plaintiff was, on August 29, 1956,

an employee of Val Jobst & Sons, Inc. (hereinafter referred to as Jobst) a construction contractor then engaged in building a rack house for defendant on premises owned by defendant in Peoria County, Illinois; that, on said date, plaintiff, while working upon said premises as an iron worker on a scaffold constructed by employees of Jobst, was injured when one of the boards of which the scaffold was constructed tilted under plaintiff's weight and caused him to fall to the ground and become seriously injured; that, on said date, there was in effect in the State of Illinois a statute commonly known as the Scaffold Act, I.R.S.1955, c. 48, §§ 60 and 69, which requires that all scaffolds used in the erection of any building be adequately constructed to give proper protection from injury to persons working thereon and therefrom, and which further provides that any person injured by reason of any wilful violation of any provision of said statute shall have a cause of action, inter alia, against the owner of the premises upon which said scaffold is being used; that defendant, notwithstanding its duty as created by said statute, wilfully violated the provisions thereof by its failure to maintain the said scaffold in a reasonable and safe condition, when in the exercise of reasonable care it knew or should have known said scaffold was unsafe, or, that defendant neglected and failed to inspect said scaffold when, in the exercise of due care, inspection would have shown said scaffold to be unsafe for the purposes for which it was used by plaintiff, in the course of his employment, or, that defendant failed to require Jobst to build and maintain said scaffold in a safe and reasonable manner, and that plaintiff was injured as a proximate result of one or more of said alleged wilful violations. The complaint prayed judgment against defendant in the sum of $50,000.

On August 5, 1958, defendant filed in this court its petition averring the statutory conditions requisite to invoke the court's jurisdiction by reason of the diversity of citizenship of the respective parties to the cause, for removal of said cause on said complaint to this court. On August 6, 1958 an order was entered transferring said cause as prayed.

Thereafter, on August 6, 1958, defendant filed its answer and two affirmative defenses addressed to said complaint. By its answer, defendant admitted that it was engaged in the business of manufacturing and selling alcoholic beverages at Peoria, Illinois; that, on and and prior to August 29, 1956 Jobst was engaged in the construction of a rack house for defendant at Peoria; that, at said time, defendant was the owner of the premises being built by Jobst, and that on August 29, 1956, the said Scaffold Act was in full force and effect in Illinois. It denied all other material allegations of the complaint, expressly denying any wilful violation on its part of the said Scaffold Act as alleged in the complaint.

As a first affirmative defense, defendant averred that plaintiff's sole cause of action and remedy in the premises, if any, is under the Workmens' Compensation Act of Illinois. I.R.S. 1955, c. 48, § 138 et seq.

As a second affirmative defense, defendant averred that it was neither engaged in the erection or construction of any structure, nor had charge of any such erection or construction, nor guilty of any wilful violation of said Scaffold Act; and, further, that plaintiff's injuries, if any, were caused solely by the negligence of the plaintiff, or the negligence of Jobst, or the combined negligence of both plaintiff and Jobst.

The cause is now before the court upon plaintiff's motions, filed August 6, 1958, to strike the said first and second affirmative defenses respectively.

Defendant now concedes that the Workmens' Compensation Act imposes no bar to plaintiff's cause of action, and, therefore, the first affirmative defense should be stricken. Kennerly v. Shell Oil Company, 13 Ill.2d 431, 150 N. E.2d 134.

Plaintiff grounds its motion to strike the second affirmative defense upon the contention that the allegations contained

in said second affirmative defense are merely conclusions of the pleader, not allegations of fact, and the further contention that the matters and things sought to be there averred do not as a matter of law state a defense to plaintiff's claim.

■ In the view I take of the case, I will assume that the averments of said defense are factual, and for the purpose of plaintiff's motion, admitted by plaintiff to be true. Therefore, for the purpose of deciding this motion, I assume that defendant was not, at any time pertinent to plaintiff's claim, engaged in the construction of any structure and had no charge of any such construction work, and assume further that plaintiff's injuries, if any, were occasioned by his negligence, or the negligence of his employer, or the negligence of both him and his employer. These facts do not constitute a defense to plaintiff's claim when the statutory provisions as interpreted by the courts of Illinois are applied to the assumed facts.

Section 1 of the Act provides, in pertinent part:

"All scaffolds, * * *, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, * * *, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, * * * as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, * * *." I.R.S.1955, c. 48, § 60.

Section 9 thereof provides, in pertinent part:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, * * * or other structure within the provisions of this act, shall comply with the terms thereof, and any such owner, contractor, sub-contractor, foreman or other person violating any of the provisions of this act shall upon conviction thereof [be fined or imprisoned, or both.]

* * * * * *

"For any injury to person or property occasioned by any wilful violation of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; * * *." I.R.S.1955, c. 48, § 69.

■ As construed and applied by the courts of Illinois, the Act imposes upon each the contractor engaged in the enumerated structural activities and the owner of the premises upon which such activities are conducted a duty, at his peril to construct and maintain scaffolds in a safe manner. E. g., Kennerly v. Shell Oil Company, 13 Ill.2d 431, 150 N.E.2d 134, and cases there cited.

Thus in Schultz v. Henry Ericsson Co., 264 Ill. 156, 164–166, 106 N.E. 236, 240, the court said, inter alia, construing the statute:

"* * * The language of the statute is mandatory and imperative that the scaffold shall be so constructed as to be safe and afford adequate protection to the persons working thereon, and the employer cannot escape liability for a wilful violation of the statute where he constructs an insufficient, unsafe and dangerous scaffold, even though he may have believed the scaffold constructed by him safe and the conditions under which it was being used not dangerous.

"The provisions of the statute we are considering are in the same language as section 33 of the Mining Act * * * in force at the time this statute was passed. In the recent case of Piazzi v. Kerens-Donewald Coal Co., supra, [262 Ill. 30], [104 N.E. 200,] this court held that the mine owner or operator is liable for a wilful violation of the min-

ing statute even though he had the place examined by a mine examiner, who in good faith believed that the place was not dangerous. It is there said: 'If the clod in the roof constituted a dangerous condition it was the duty of the mine examiner to discover that fact and mark the place. * * *.' And in Aetitus v. Spring Valley Coal Co., 246 Ill. [32], 39, 92 N.E. [579,] 581, it is said: 'When the mine owner or operator is advised of the conditions in the mine, he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so he acts at his peril, and he cannot excuse himself because he or his examiner or manager may think the mine safe. To so hold would be to permit the mine owner or operator * * * to pass upon a question which, in every case like this, is a matter of proof and is to be determined as a fact by the jury. (Citations omitted).'

"What was said in the cases cited is equally true and applicable to the case at bar, and for the reasons there given the same rule of construction should be adopted in construing the provisions of the statute here under consideration. * * The word 'willfully' [as employed in Section 9 of the Scaffold Act], is synonymous with 'knowingly', and to constitute a willful violation of the statute it is not necessary that there should be 'a reckless disregard' of its provisions. The employer is liable not only when the dangerous conditions are known to him, but also when by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known to him. Peebles v. O'Gara Coal Co., 239 Ill. 370, 88 N.E. 166"

In Claffy v. Chicago Dock & Canal Co., 249 Ill. 210, 222, 94 N.E. 551, the court, in affirming a judgment against a land owner under the Act, construed section 7 thereof as imposing upon both the owner of the premises and the contractor doing the work a mandatory duty to comply with the provisions of the statute, and civil liability for failure to comply with the statutory requirements.

In John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill. 331, at page 335, 141 N.E. 739, at page 740, 38 A.L.R. 559, the court again construed the statute in the following language:

"The act of 1907 imposes upon the contractor and the owner, as well as upon subcontractors, foremen, or others engaged in the work, the duty of complying with the provisions of the act so far as the civil liability is concerned. Claffy v. Chicago Dock [& Canal Co.,] Co., 249 Ill. 210, 94 N.E. 551 * * * Since the enactment of this law the owner of the property and every contractor and subcontractor are equally bound by the act to comply with its provisions, and in case of wilful failure are liable to the party injured for any direct damages sustained by reason of such failure. This liability to the person injured, the owner or original contractor cannot evade by any contract with the contractor or subcontractor."

Finally, in the recent case of Kennerly v. Shell Oil Company, 13 Ill.2d 431, 150 N.E.2d 134, the statute was again before the court for construction with relation to a fact situation not unlike the allegations of the instant complaint. In that case, Kennerly, an employee of Foster Wheeler Corporation, brought an action against Shell for damages for injuries sustained when he fell from a scaffold constructed by employees of Foster Wheeler and used by employees of the latter in constructing a distillation unit upon premises owned by Shell. In affirming a judgment for Kennerly, the court reviewed its earlier decisions in the Claffy and Griffiths cases, and decided, contrary to Shell's contentions, that the Act imposed liability upon the latter as owner of the premises where the construction work was being done.

In pertinent part, the court said:

"The Scaffold Act deals with highly dangerous activities. It has been regarded from the outset as intended to fix *an independent, nondelegable duty of compliance upon the owner of the property and upon each contractor and subcontractor engaged in the work*. Neither this court nor the Appellate Court has deviated from this construction of the statute, first announced almost fifty years ago. In the face of this construction of the statute, the General Assembly has reenacted the section without changing the language that imposes the liability here involved. (Laws 1951, p. 1309.) We are not at liberty to change that language now." (Emphasis supplied.) 150 N.E.2d at page 137.

In rejecting Shell's contention that the Scaffold Act was superseded by the Workmen's Compensation Act, the court said:

"[The Act] deals with work that the General Assembly has regarded as particularly hazardous, and its purpose is to reduce the hazard to the fullest possible extent. To that end it has imposed a duty upon both the contractor and the owner. The duty of each is independent of the duty of the other, and neither can escape his statutory liability by pointing to the other's breach of duty. If injury is caused by a defendant's 'wilful violation' of the act or by his 'wilful failure to comply with any of its provisions,' he is liable regardless of the fault or liability of any other. Cf. John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill. 331, 141 N.E. 739, 38 A.L.R. 559." 150 N.E.2d at page 138.

Again, at 150 N.E.2d at page 139, the court said, in pertinent part:

"The defendant contends that the evidence did not prove a 'wilful violation' of the Scaffold Act, or a 'wilful failure to comply' with it. It also argues that this court erred when, in Schultz v. Henry Ericsson Co., 264 Ill. 156, 166, 106 N.E. 236, 240, it said: 'The word "wilfully" is synonymous with "knowingly," and to constitute a wilful violation of the statute it is not necessary that there should have been "a reckless disregard" of its provisions. The employer is liable not only when the dangerous conditions are known to him, but also when by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known to him. Peebles v. O'Gara Coal Co., 239 Ill. 370, 88 N.E. 166.' We see no reason to depart from this statement. It gives to the word 'wilful' as used in the Scaffold Act the same meaning that was given to the same word in the Mining Act. (Aetitus v. Spring Valley Coal Co., 246 Ill. 32, 38, 92 N.E. 579; Peebles v. O'Gara Coal Co., 239 Ill. 370, 374, 88 N.E. 166), and in the Occupational Disease Act of 1911. First National Bank of Ottawa v. Wedron Silica Co., 351 Ill. 560, 570, 184 N.E. 897. In this case the proof shows that the floor of the scaffold from which plaintiff fell was made of loose boards and had no handrail. *Defendant knew that scaffolds were being used, and it can not escape the mandatory duty that the statute imposes by closing its eyes to their condition.*" (Emphasis supplied.)

Obviously, the controlling factors guiding the decision in the above cases, are the public policy basis of the statute and the seriousness of the hazards which the statute was designed to meet. Faced with these considerations, the Illinois courts have construed the statute as one imposing absolute liability in civil cases upon each of the persons to whom it is expressly applicable. Control of the structural activities is not a relevant factor. Cf. Kennerly v. Shell Oil Co., 13 Ill.2d 431, 150 N.E.2d 134, 137. The owner, having knowledge that scaffolds will be used in

**614**

structural activities conducted by a contractor upon his premises, is required, at his peril, to insure that all scaffolds so used are safe and are so constructed and so used as to comply with the provisions of the Act. If he fails in this regard he cannot escape liability by asserting and proving a breach of the duty of a contractor or some other person who, under the provisions of the Act, is equally liable with him.

Nor can he escape liability for a breach of the duty which the mandatory provisions of the Act impose by reliance upon the contributory negligence of the injured party or upon the doctrine of assumption of risk. In Schultz v. Henry Ericsson Co., 264 Ill. 156, 106 N.E. 236, the appellant urged that Schultz, appellant's employee, had knowledge of the dangerous conditions of the scaffold which caused his injury, and that, therefore, he was barred from recovery by the assumption of risk doctrine. In rejecting this contention, the court assumed that Schultz was chargeable with knowledge of the hazardous conditions; but it held that his recovery of damages for personal injury was not barred thereby, saying, at page 164 of 264 Ill., at page 239 of 106 N.E.: "The object to be attained by this statute was to prevent injuries to persons employed in this dangerous and extra hazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal." In Fetterman v. Production Steel Company of Illinois, 4 Ill.App. 2d 403, 124 N.E.2d 637, 639, 640, it was urged that the plaintiff, who was injured when a scaffold guardrail to which he was clinging broke, could not recover for the reason that he, "by his conduct in climbing the outside interlacing of the scaffold rather than using the ladder which had been provided and was available [to gain access to the floor thereof], used the scaffold in * * * an irregular, unwarranted and uncustomary manner, * * * and that it was not contemplated that the [Scaffold] Act be made applicable regardless of the use or abuse to which the scaffold should be put." The court, citing the Griffiths decision, rejected the contention and held that contributory negligence and assumed risk did not operate to bar a judgment for plaintiff upon proof of violation of the Act by the defendant.

From what has been said above, it follows that defendant's second affirmative defense must also be stricken. That defense avers lack of control by defendant and the negligence of plaintiff and of Jobst as a cause of plaintiff's injuries. Neither singly nor in the aggregate do these facts constitute a defense to the plaintiff's allegations of a cause of action based upon the Act.

Both defendant's first and second affirmative defenses should be stricken, and the cause set for trial in due course upon the complaint and answer.