Anna L. Bryntesen, Plaintiff-Appellee, v. Carroll Construction Company, an Illinois Corporation, Defendant-Appellant.

Gen. No. 47,783.

First District, Second Division.

January 30, 1962.

Opinion on Rehearing June 19, 1962.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (William H. Symmes, of counsel), for appellant.

Peabody, Westbrook, Watson & Stephenson, of Chicago (Lowell H. Jacobson, Burton H. Young, and Lawrence P. Hickey, of counsel), for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court:

John Bryntesen, a welder's helper, was killed when he fell from a scaffold while working on the construction of a high school building in Libertyville, Illinois. His widow brought suit in the Circuit Court of Cook County against Carroll Construction Company, the general contractor, under section 9 of the Structural Work Act, also referred to as the Scaffold Act (Ill Rev Stats 1961, c 48, §§ 60–69). Judgment was entered on a verdict of $12,500 in favor of plaintiff, but was reversed on the ground that the action was barred by a former adjudication (26 Ill App2d 307, 167 NE2d 581 (1960)). In granting leave to appeal, the Supreme Court held (22 Ill2d 63, 67, 174 NE2d 172 (1961)) that the right of the present plaintiff to recover was not adjudicated in the first case

> "despite the persistent, but misguided, efforts of the plaintiff's counsel to have that right adjudicated. So far as the Structural Work Act aspects of the first case are concerned, the final judgment was that the action was not brought by the proper party, and that is not a judgment on the merits. (People ex rel. Porter v. Minnie Creek Drainage Dist. 311 Ill 228.) . . . ."

The case was therefore remanded to this court with directions to pass upon the other questions raised upon the appeal.

Since our former opinion was predicated solely on our holding that plaintiff's suit in the Circuit Court of Cook County had already been prosecuted unsuccessfully to judgment in the Circuit Court of Lake County and appealed unsuccessfully to the Illinois Appellate Court, Second District, it will be necessary, in order to pass upon the other questions raised, to set forth additional facts relating to the merits of the controversy.

At the time of the accident, John Bryntesen was employed by the Cragin Construction Company. The defendant, Carroll Construction Company, was the general contractor, and employed a superintendent who exercised supervision over Cragin and thirty-five other contractors working on various parts of the job. Bryntesen was working on what is commonly called a float scaffold—a platform four by eight feet, made of one-inch thick plywood; along both ends of the floating platform two-by-fours were fastened which protruded at the four corners from which one-inch ropes were attached and looped over a steel truss or beam of the building under construction. After Bryntesen brought over some bolts for a welding job, he stepped backward on the scaffold and fell to the ground, and shortly thereafter died as a result of the injuries sustained. The float scaffold was approximately thirty feet above ground and was pulled up to within two feet of the beam itself to enable the welder to weld the beams to each other. As he would complete his work on one location, the scaffold would be moved to other places on the structure; it would also be swung around to different positions underneath the beams, as the welder required. At the time of the accident, the float had been in one position for several days. There was no handrail attached to the float. The float was constructed by Cragin and erected by Bryntesen himself.

Plaintiff in the present case is suing for compensation under the Scaffold Act for loss of support. Prior to instituting this action, plaintiff had recovered from Cragin $8000 in workmen's compensation payments for exactly the same loss, i. e., loss of support; see Workmen's Compensation Act (Ill Rev Stats 1961, c 48, § 138.7(a)). In order to prevent a double recovery by plaintiff, defendant offered to produce in evidence the workmen's compensation payments received by plaintiff. This offer was denied by the trial judge, despite the fact that the resulting award of $12,500 by the jury to the plaintiff enabled her to recover $8000 more than her adjudicated loss. Defendant contends that the allowance of a double recovery for one injury violates a basic principle of law and constitutes reversible error.

The injustice of allowing double recovery in a situation such as the one before us is aggravated because plaintiff's entire theory of liability against the defendant, Carroll Construction Company, depends upon her contention that Bryntesen's employer, Cragin Construction Company, wilfully and actively violated the Scaffold Act. Cragin, being a tort-feasor, could not recover from its employee payments made under the Workmen's Compensation Act. Manion v. Chicago, R. I. & P. R., 2 Ill App2d 191, 119 NE2d 498 (1954). Unlike the innocent employer whose payments are in the nature of insurance with the concomitant right of subrogation, Cragin's payments to plaintiff partake of partial satisfaction of a tort liability; see Ill Rev Stats 1961, c 48, § 138.5. Payments in lieu of tort liability are generally admissible in evidence to reduce the damages of a second tort-feasor, since to force the defendant to pay the entire bill for plaintiff's loss after plaintiff had already partially collected from one against whom tort liability could lie would operate as an injustice. Hyde v. Montgomery Ward & Co., 343 Ill App 388,

99 NE2d 382 (1951). Other states have drawn this analogy in barring a double recovery to plaintiff. In Brewer v. Appalachian Constructors, 135 W Va 739, 65 SE2d 87, 93 (1951), the court pertinently observed:

> "A familiar principle of law requiring no citation of authorities, is that a plaintiff can have only one recovery for an injury. We see no reason why the rule should not apply where recovery or partial recovery is by way of an award from the workmen's compensation fund. It is also well settled that 'Partial satisfaction of the injured person by one joint tort-feasor is a satisfaction, pro tanto, as to all.' Point 5, syllabus, New River & Pocahontas Consolidated Coal Co. v. Eary, 115 W Va 46, 174 SE 573. This rule should also apply where partial payment for the injury has been made from the workmen's compensation fund on account of one of the joint tort feasors being a subscriber thereto."

In accord: Baugh v. Rogers, 24 Cal2d 200, 148 P2d 633, 642 (1944); Maio v. Fahs, 339 Pa 180, 14 A2d 105, 110 (1940); Houston Gas & Fuel Co. v. Perry, 127 Tex 102, 91 SW2d 1052 (1936).

To justify this double recovery, plaintiff relies primarily on Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717 (1957), and Rylander v. Chicago Short Line Ry. Co., 17 Ill2d 618, 161 NE 2d 812 (1959). These cases denied defendant the right to inquire into the compensation recoveries for two reasons: (1) the defendant third-party would not have been able to introduce in evidence workmen's compensation recovery as long as the issue of employer's subrogation rights were still in doubt—otherwise plaintiff might have to pay back and thus receive nothing or less than the adjudicated value of

his injuries; (2) a third-party should not be allowed to force plaintiff to litigate the additional issue of the innocence or guilt of the employer. In the instant case plaintiff, far from being forced to litigate the guilt of Bryntesen's employer, Cragin, has predicated her entire case on the guilt of Cragin. She admits that Cragin, an independent contractor, constructed and erected the scaffold in question; if the scaffold thus constructed by Cragin was not in violation of the Scaffold Act, the action should be dismissed. To put it another way, plaintiff is attempting to prove Cragin guilty as a prerequisite to establishing the liability of Carroll, at the same time leaving open the question of Cragin's innocence or guilt for the purpose of preventing the introduction of workmen's compensation to her. Having voluntarily proved one set of facts, plaintiff cannot in the same lawsuit take a completely inconsistent factual position. Paoli v. Zipout, Inc., 21 Ill App2d 53, 57–60, 157 NE2d 273 (1959).

Of the cases called to our attention, Kennerly v. Shell Oil Co., 13 Ill2d 431, 150 NE2d 134 (1958), is closest on the facts. The Kennerly case was also an action under the Scaffold Act; there, as here, the liability of defendant was dependent upon the violation of that statute by the employer. However, the trial court in that case allowed in evidence the plaintiff's recovery under the Workmen's Compensation statute. On appeal defendant nevertheless claimed that plaintiff had received a double recovery. Plaintiff contended that the jury had taken the workmen's compensation award into account before rendering a verdict. The Supreme Court, although passing the question whether plaintiff had made a double recovery, stated (p 440) that "the ultimate rights of the plaintiff, the defendant and the employer were not before the court for determination in this proceeding."

173

We take this to mean that the question of preventing double recovery must be litigated by a further proceeding between the parties. In the instant case, however, no further proceeding is necessary because there is no question (1) that the plaintiff has made a double recovery, and (2) that the employer cannot reach any of the recovery of the plaintiff. A further reason why Cragin has been precluded from subrogating itself to plaintiff's rights is that Cragin cannot recover its payments to plaintiff because plaintiff, being the decedent's widow, suing for support, is not Cragin's employee or its personal representative; it was so held in Dillon v. Nathan, 10 Ill App2d 289, 135 NE2d 136 (1956).

Lastly it is urged by plaintiff that Cragin may have a common-law right of subrogation. This question was also decided in the Dillon case (pp 308–309), wherein the court refused to allow common-law subrogation, distinguishing the same cases relied on here by plaintiff: Grasse v. Dealer's Transport Co., 412 Ill 179, 106 NE2d 124 (1952); Geneva Const. Co. v. Martin Trans. Co., 4 Ill2d 273, 122 NE2d 540 (1954).

We reach the conclusion that the workmen's compensation payments to plaintiff should have been submitted to the jury for consideration in arriving at the amount of the verdict.

As another ground for reversal, it is urged that during the voir dire examination of the jury plaintiff's counsel repeatedly sought to extract promises from the jurors that they would follow his theory of the law. Plaintiff seeks to justify this conduct of counsel by contending that defendant waived the right to question it on appeal by failing to object in apt time. The record discloses that when plaintiff's counsel, in interrogating the first panelist, began going into his legal theory of the case, counsel for defendant stated: "I will object to that." Plaintiff's counsel

174

then started to qualify his statements, but later, with the same panelist, reverted to his practice of instructing the jurors on his theory of the law, and finally stated: "Mr. Kordik [the juror being examined], it is only necessary that you be satisfied that the Carroll Construction Company failed to comply with this statute. Will you just direct your attention, as you hear the evidence, to that fact?" Defendant's counsel then said: "I think that is something the Judge will instruct the jury on when the time comes," to which the trial judge responded: "I suppose when you are asking the jury, you have a right to go into this phase of the law. We only do it once." Interrogation of other jurors followed the same pattern, without specific objections being made to the interrogations of the several jurors. It is clear, however, that defense counsel, having objected to the interrogation of the jurors as to the law and the court having disagreed with his objection, defendant was not required to keep objecting every time the issue arose. This point is squarely decided by Chicago Union Traction Co. v. Lauth, 216 Ill 176, 180, 74 NE2d 738 (1905). It appears that in the last attempt to correct the situation, defense counsel moved for a mistrial immediately at the end of the voir dire. The court overruled the motion and reiterated its position. Apparently, neither the trial judge nor counsel were cognizant of rule 24–1 of the Illinois Supreme Court which had been adopted only a short time before the trial of this case (Ill Rev Stats 1961, c 110, § 101.24–1). That rule provides that the judge shall initiate the voir-dire examination of jurors by identifying the parties and their respective counsel, and shall briefly outline the nature of the case. The judge in addition is required to put to the jurors any questions which he thinks necessary touching their qualifications to serve as jurors in the cause. The rule then provides that the parties or their

175

attorneys shall be allowed a reasonable opportunity to supplement such examination, "but shall not directly or indirectly examine jurors concerning matters of law or instructions." Neither party requested the judge to initiate the voir-dire examination of the jurors, as provided in rule 24–1. Plaintiff's counsel now contends that since this rule was not invoked, it was proper for him to pursue the course employed. In the early case of Ventriss v. Pana Coal Co., 155 Ill App 152 (1910), the court held that the voir-dire examination there conducted constituted reversible error, and said (p 154):

> "It is urged by appellant that in permitting the jurors on their voir dire to answer these questions [whether upon certain stated facts they would find for the plaintiff] virtually committed the jurors, if certain facts were shown on behalf of the plaintiff, to agree to render a verdict in his behalf and this, without regard to what might be disclosed upon the part of the defense or without relation to what the instructions of the court to the jury might be, regarding such conditions of affairs.
>
> "The court permitted too great a latitude in the examination of these jurors and should not have allowed the examination to extend to the point of asking the jurors whether upon certain stated facts they would find for the plaintiff. It was error to permit this examination of these jurors."

Since, in the view we take, this case will in all likelihood be retried, we assume that the court and counsel will give due consideration to the provisions of rule 24–1 and obviate the error committed in the first trial.

It is next urged that the court erred in excluding evidence pertaining to custom and usage with respect

176

to a railing on a float scaffold. The Scaffold Act provides (§§ 60, 69):

> "60. . . . That all scaffolds . . . erected or constructed by any person, firm or corporation in this State for the use in the erection . . . of any house, building, . . . or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, . . . .
>
> "Scaffold, or staging, swung or suspended from an overhead support more than twenty (20) feet from the ground or floor shall have, where practicable, a safety rail properly bolted, secured and braced, rising a [at] least thirty-four (34) inches above the floor or main portion of such scaffolding or staging, and extending along the entire length of the outside and ends thereof, and properly attached thereto, and such scaffolding or staging shall be so fastened as to prevent the same from swaying from the building or structure. ". . .
>
> "69. . . . Any owner, contractor, sub-contractor, . . . or other person having charge of the erection, construction, . . . of any building . . . or other structure within the provisions of this act, shall comply with all the terms thereof, . . . ."

During the course of the trial, defendant offered to prove, by the testimony of Leif Larson, an ironworker of thirty years' experience, the custom and usage with respect to scaffolding. Part of the testimony is as follows:

"Prior to July 3, 1953, I [Leif Larson] had worked many times on float scaffolds.

". . . .

"Mr. Symmes [Counsel for Defendant]: Q. Were these float scaffolds you worked on prior to July 3, 1953, ever equipped with the thirty-four inch safety rail?

"The Witness: A. No."

The trial court denied the offer, apparently on the theory that it had no relevance to the issue whether the scaffold was erected in "a safe, suitable and proper manner," or whether it was "practicable" to use a thirty-four inch handrail, the touchstone of liability under the Scaffold Act. In Fetterman v. Production Steel Co. of Illinois, 4 Ill App2d 403, 124 NE2d 637 (1954), it was held that evidence of custom and usage is properly admissible under the Scaffold Act. In that case evidence was introduced to show that the method in which the injured employee used the scaffold leading to his injury was (p 413) in accordance with the custom of contractors and employees. Because defendant had not built his scaffold with this custom in mind, the jury found that the scaffold was not erected in "a safe, suitable and proper manner." The Appellate Court, in upholding the admissibility of evidence relating to custom and usage, stated (p 413):

"We are of the opinion that it was proper for the plaintiff to introduce evidence that climbing the scaffold was a normal and proper method of ascent. In a tort case custom and usage is a fact to be proved as any other fact and it may be the subject of expert testimony. Dickson v. George B. Swift Co., 238 Ill 62, 65; O'Rourke v. Sproul, 241 Ill 576, 582; Fowler v. Chicago Rys. Co., 285 Ill

196, 200; Gourley v. Chicago & E. I. Ry. Co., 295 Ill App 160, 176."

The evidence sought to be introduced by defendant in this case concerning the custom and usage of contractors and their employees was offered to prove the suitability and propriety of the scaffold erected, and to show the non-practice or impracticability of a handrail around a float scaffold. This evidence was particularly cogent in the light of other testimony that the float scaffold is pulled to within two feet of the beam upon which it hangs and from there is swung around from place to place under the beams, thus allowing the inference that it was impracticable to place a railing on any part of the float scaffold thirty-four inches in height, without tearing it down whenever the scaffold was moved. The welder did his work in a horizontal position; it was necessary for him to be in close proximity to the steel beams during the welding operation. The language of the statute providing that a scaffold more than twenty feet from the ground shall have a safety rail properly bolted, secured, and braced, rising at least thirty-four inches above the floor of such scaffold or stage, "where practicable," indicates an intent on the part of the legislature to require reasonable provisions for safety. In the circumstances, we think the testimony of Leif Larson pertaining to custom and usage was relevant, and it became a question for the jury to determine whether it was "practicable" to construct a thirty-four inch railing on a float scaffold.

Lastly we do not think that trial judge erred in refusing defendant's offered instruction requiring plaintiff to prove freedom, on the part of the deceased, from contributory, wilful violation of the Scaffold Act. In the Kennerly case the court held (p 436) that the act "fixes its own standard of liability." If the

float scaffold violated the requirements of the statute, contributory negligence would not be a defense.

For the reasons indicated, the judgment of the Circuit Court is reversed, and the cause remanded for a new trial.

Judgment reversed and cause remanded for a new trial.

BRYANT and BURKE, JJ., concur.

ON REHEARING

MR. JUSTICE BURKE delivered the opinion of the court:

John Bryntesen was employed by the Cragin Construction Company which was in charge of erecting the structural steel for the Libertyville-Fremont High School. Carroll Construction Company, the general contractor, employed a superintendent who had general supervision over Cragin and 35 other contractors building various parts of the job. On July 3, 1953, Bryntesen was working on a "float scaffold," a platform 4 feet wide and 8 feet long, made of one inch thick plywood. Along both ends of the scaffold two by fours were fastened which protruded at the four corners. From these four corners one inch ropes were fastened which were looped over a steel truss or beam, a part of the auditorium of the high school. As Bryntesen was preparing to put some nuts on bolts, he stepped backward on the scaffold and fell to the ground. About three hours thereafter he died as a result of the injuries sustained in the fall. The floating platform was approximately 30 feet above the ground and was pulled up to within two feet of the steel beam to allow the welder to weld the bolts. As the welder would complete his work in one spot the float would

180

be moved to other places on the structure. It would also be swung around to different positions underneath the beams as the welder required. At the time of the unfortunate mishap the float had been in one position for a few days. There was no handrail attached to the float. The float was constructed by Cragin. It was brought to the job site in a Cragin truck and put up by both Larson, the foreman, and Bryntesen.

Anna Bryntesen, the widow of John, filed a complaint against Carroll Construction Company in the Circuit Court of Cook County alleging "wilful" violation of the Scaffold Act by the defendant resulting in the death of decedent and causing loss of support to the the plaintiff. Defendant appeals from the judgment entered on a verdict of $12,500. The first point advanced by the defendant is that the application of the doctrine of res judicata bars the plaintiff from maintaining the suit. The contention that the instant action has been litigated unsuccessfully in the Lake County Circuit Court was sustained by us. In the opinion reported in 26 Ill App2d 307, 167 NE2d 581, we reversed the judgment and remanded the cause with directions to enter judgment for the defendant. The Supreme Court decided that the right of the plaintiff to recover for a wilful violation of the structural work Act was not adjudicated in the Lake County case, reversed our judgment and remanded the cause with directions that we pass upon the other questions raised. See 22 Ill2d 63, 174 NE2d 174.

We turn to the contention of defendant that the trial court erroneously excluded evidence of the recovery by plaintiff of $8,000 in workmen's compensation payments for loss of support. Defendant asserts that to prevent a double recovery by her, it offered to introduce evidence of the workmen's compensation payments received by her. Defendant says that the

denial of this offer of proof enabled her to recover $8,000 more than her adjudicated loss, and that if successful she will be compensated in the amount of $20,500 for a loss which has by due process of law been evaluated at $12,500. Defendant calls attention to the cases which hold that evidence of payments in lieu of tort liability under a covenant not to sue is admissible to reduce the damages of a joint tort-feasor. See Hyde v. Montgomery Ward & Co., 343 Ill App 388, 99 NE2d 382; De Lude v. Rimek, 351 Ill App 466, 115 NE2d 561; Ryan v. Monson, 33 Ill App2d 406, 179 NE2d 449. We do not find any case in this state permitting the receipt of a workmen's compensation award paid by the employer to diminish the damages recoverable against a third party tort-feasor for his wrongdoing. In O'Brien v. Chicago City Ry. Co., 305 Ill 244, 262–3, 137 NE 214 the Supreme Court said (262):

"No injustice is done to a person negligently injuring another in requiring him to pay the full amount of damages for which he is legally liable without deduction for compensation which the injured person may receive from another source which has no connection with the negligence, whether that source is a claim for compensation against his employer, a policy of insurance against accidents, a life insurance policy, a benefit from a fraternal organization or a gift from a friend."

In Johnson v. Turner, 319 Ill App 265, 49 NE2d 297 the court said (278):

". . . The amount the employee recovers from the third party is measured by the liability of the third party to him, regardless of whether his employer is or is not entitled to reimbursement or indemnification out of the money. It is of no consequence to the third party whether the employer receives any part of it or not. The third party's liability is not affected thereby,

and the matter of whether the employer is reimbursed is a matter wholly between him and the employee."

See also Hulke v. International Mfg. Co., 14 Ill App2d 5, 142 NE2d 717; and Rylander v. Chicago Short Line Ry. Co., 17 Ill2d 618, 161 NE2d 812. We think that the trial court properly excluded evidence of the workmen's compensation award to the widow.

■■ Defendant argues that it should have a reversal because the court erroneously sanctioned plaintiff's repeated instructions to the jury on the law during the voir dire examination. The trial judge did not initiate the voir dire examination of jurors prescribed by Supreme Court Rule 24–1. The attorney for plaintiff violated Rule 24–1 by examining the jurors concerning matters of law. The attorney for defendant made a general objection during the examination of the first juror. After plaintiff's acceptance of the last juror and the panel, the court denied defendant's motion for a mistrial. A reading of the transcript convinces us that despite the infraction the defendant was not prejudiced.

■■ As a further ground for reversal defendant urges that evidence pertaining to custom and usage was improperly excluded. Leif Larson, called by plaintiff, testified about the occurrence. He had been an ironworker for 30 years. At the time of the mishap this witness was standing at the top of the steel girder and Bryntesen was standing on the scaffold. Prior to that day he had worked many times on a floating scaffold. On cross-examination he testified that a "railing could have been nailed to the two by four but it was not done" and that "when the distance between the surface of the float and the beam is two feet, a railing 34 inches could not be built around the scaffold." He testified further that "if a 34 inch guard rail were to have been erected on the float, it would have to be taken

down and put up constantly as the position of the float was changed so that the welder could use it." He said that the welder had a beam to grip which was not available on the side where Bryntesen was standing. During cross-examination the court sustained an objection to a question by the defendant as to whether float scaffolds were ever equipped with a guard rail. The following offers of proof were then made outside the presence of the jury.

Answering a question whether the float scaffolds he worked on prior to July 3, 1953, were ever equipped with a 34 inch safety rail, he answered: "No." Answering an inquiry as to how many years he used this type of float scaffolding without a safety rail, he said: "All the years I have been an ironworker" and that he had been an ironworker since 1929. Answering a question whether during all these years employees of the Illinois State Department of Labor or building inspectors inspected the jobs where he was working, he said that he "never saw any inspector." He answered further that he saw an architectural inspector but not a building inspector. In answer to a question whether in all the years he used a float scaffold without a safety rail anyone came to him and said he was from the Illinois Department of Labor and "you were to put a safety rail on that scaffold," he answered: "No." To the question whether anyone came to him and said he was a building inspector from the community in which he was working and told him he "had to put a safety rail on the float scaffold," he answered: "No, never." To the question, "Did any representatives ever come up and say that you had to put a safety rail on the float scaffold?" he answered: "No." To the question, "Would a safety rail 34 inches in height be in your way as you used the scaffold?" he answered: "I wouldn't say it would be in the way, no." To the question, "What reason would you have for not employing a safety rail

184

on a float scaffold?" he answered: "If the man wanted it, we would put it on." To the question, "Did Mr. Bryntesen want one?" he answered: "No." To the question, "Therefore, you have never seen anybody use one?" he answered: "No, I haven't." The court denied defendant's offer of proof.

Defendant says that the denial was clear error in view of the holding in Fetterman v. Production Steel Co., 4 Ill App2d 403, 124 NE2d 637. In that case we held that it was proper for the plaintiff to introduce evidence that it is common usage among contractors and other employees engaged in the building industry to use the scaffold of another where it is in place where they have work to do. That part of the offer attempting to show the negative attitude of inspectors or other representatives of the State Department of Labor or any community would be inadmissible. It is to be noted that in the offer the witness said that he would not say that a safety rail 34 inches in height would be in his way as he used the float scaffold, and that he also said that if "the man" wanted the safety rail "we would put one on." In the presence of the jury the defendant cross-examined Larson extensively on the issue of the "practicability of erecting a guard rail on the scaffold."

The theory of the plaintiff was that the scaffold was maintained without a safety rail in violation of the structural work Act. Section 1 of that Act (Ill Rev Stats c 48, § 60, 1961), provides that a scaffold suspended from an overhead support more than 20 feet from the ground shall have, where practicable, a safety rail properly bolted, secured and braced, rising at least 34 inches above the floor, and extending along the entire length of the outside and ends thereof. Defendant says that it offered to prove the suitability and propriety of the scaffold erected and to show the non-practice or impracticability of a handrail around a float scaf-

185

fold. It says that the excluded evidence was particularly cogent in the light of other testimony that the float scaffold is pulled to within two feet of the bottom of the beam upon which it hangs, and from there is swung around from place to place under the beams, thus allowing the inference that it was impracticable to place a railing on any part of the float scaffold without tearing it down whenever the scaffold was moved. We do not think that defendant was harmed by the exclusion of the proffered testimony. It examined Larson extensively on the practicability of erecting a railing on the scaffold. Furthermore, Larson said the railing would not be in the way. Defendant also argues that the intent of the handrail provision is to provide solely for handrails around the traditional scaffold which is erected against a wall for painting and brick laying and not a float scaffold. Paragraph 2 of Section 1 in requiring that the safety rail extend along the entire length of the outside and ends does not exclude a float scaffold. It is to be noted that the defendant did not introduce any witnesses.

▪ ██ Defendant insists that reversible error was committed when the court refused to instruct that if the jury found that John Bryntesen also knowingly and wilfully violated the Scaffold Act he could not recover. Bryntesen was not a person having charge of the erection of the building. He was one of the persons the Act was intended to benefit. To hold that a worker's wilful violation of the Act would be a bar to recovery, would render the Act unenforceable. In Fetterman v. Production Steel Co., 4 Ill App2d 403, 124 NE2d 29, the court said (410):

"The object of the Act is to prevent injuries to persons employed in dangerous and extra-hazardous occupations so that negligence on their part in the manner of doing their work might not prove fatal. For these reasons contributory negligence and assumed risk are

186

not a defense. See John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill 331; Schultz v. Henry Ericsson Co., 182 Ill App 487, affd 264 Ill 156."

We think that the court was right in refusing to give the instruction.

██ Finally, defendant asserts that the court erred in refusing to give the following instruction:

"When the word practicable is used in these instructions it is meant that the placing of a rail on the float thirty-four inches high at a minimum would be the exercise of reasonable diligence in view of all the circumstances which might attend upon the execution of the work. It is not enough that it be possible. It may be, and often is, possible to do that which it is wholly impracticable to do."

Defendant has waived its right to urge any error in the refusal of this instruction by its failure to specify the point in any of the errors set out in the post-trial motion. See Sec 68.1, Ch 110, Ill Rev Stats 1961; Taylor v. Hughes, 17 Ill App2d 138, 143, 149 NE2d 393; Foster v. Union Starch & Refining Co., 11 Ill App2d 346, 354, 137 NE2d 499.

The jurors were fully informed of the issues in the case by the lawyers and the court. The able trial lawyer for the defendant in telling the jury what he expected the evidence to show said that his client did not put a railing around the four sides of the scaffold "because it was not practicable" and that a railing "would have been in the way" as the men "used the scaffold as they worked." In the argument to the jury plaintiff's lawyer stated that it would be practicable to put a safety rail around the scaffold. Defendant's lawyer also argued that there was no wilful or knowing violation of the scaffold Act. The jury was instructed that if they found under the evidence "that it was not practicable to have a safety rail 34 inches above the

floor and extending along the entire length of the outside and ends of the float scaffold in use on July 3, 1953, then the verdict must be not guilty." We are convinced that there was a fair trial and that the judgment is just. Therefore the judgment is affirmed.

Judgment affirmed.

BRYANT, P. J., concurs.

FRIEND, J., dissenting:
I dissent for the reasons set forth in the superseded opinion filed January 30, 1962, on file in the office of the clerk of the court.